**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DANIELA DAWSON, individually and on behalf of all others similarly situated, | No. 1:23-cv-5329 |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| | **JURY DEMAND** |
| v. | |
| BAYER CORPORATION AND BAYER HEALTHCARE LLC, | |
| *Defendant.* | |

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

# Table of Contents

I.      Introduction. ....................................................................................................................1

II.     Parties. ..............................................................................................................................2

III.    Jurisdiction and Venue. ...................................................................................................2

IV.     Facts. .................................................................................................................................3

        A.      Lead is toxic. ........................................................................................................3

        B.      Defendants' Products contain lead. ...................................................................4

        C.      Consumers are not aware of the danger posed by Defendants' Products. ...................6

        D.      Defendants are aware of this risk. .....................................................................7

        E.      Plaintiff was misled by Defendant. ...................................................................7

V.      Class Action Allegations. ................................................................................................8

VI.     Claims. .............................................................................................................................10

        Count I: Breach of the Illinois Consumer Fraud and .....................................................10

        Deceptive Business Practices Act ....................................................................................10

        Count II: Violation of Magnuson-Moss Warranty Act, 15 U.S.C. §2301, et seq. ...................12

        Count III: Breach of Implied Warranty ..........................................................................15

        Count IV: Breach of Express Warranty ..........................................................................17

        Count IV: Quasi-Contract ...............................................................................................17

VII.    Jury Trial Demand. .......................................................................................................18

VIII.   Prayer for Relief. ............................................................................................................18

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

## I.    Introduction.

1.    Lead is a toxic metal.  When consumed, it accumulates in the body and "affects multiple body systems."[1]  It is linked to "a host of health problems in children and adults."[2]  In adults, for example, it can "lead to nervous system problems, hypertension, immune system suppression, kidney damage, and reproductive issues."[3]  In children, it can cause "profound and permanent adverse health impacts, particularly on the development of the brain and nervous system."[4]  It also "causes long-term harm in adults, including increased risk of high blood pressure and kidney damage."[5]  There is "no known safe blood level concentration."[6]  "Lead exposure is estimated to accounts for 21.7 million years lost to disability and death…worldwide due to long-term effects on health."[7]

2.    Lead exposure also causes reproductive harm. For example, lead exposure "affects female reproduction by…reducing fertility potential, delaying conception time, altering the hormonal production, circulation, [and] affecting pregnancy and its outcome."[8]  It has significant risks for pregnant women. "Lead in the blood during pregnancy can" "increase risk for miscarriage, cause the baby to be born too early or too small, hurt the baby's brain, kidneys, and nervous system," and "cause the child to have learning or behavior problems."[9]  During pregnancy, "[l]ead can pass from a parent to their unborn baby."[10]

3.    Due to its toxicity, lead exposure has been regulated.  For example, the state of California has set a maximum allowable dose level for lead, at 0.5 micrograms a day, because exceeding this maximum allowable dose is unhealthy and unsafe.

---

[1] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health
[2] https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/
[3] *Id.*
[4] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6309352/.
[9] https://www.cdc.gov/nceh/lead/prevention/pregnant.htm
[10] *Id.*

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

4.      Defendants Bayer Corporation and Bayer Healthcare LLC (collectively "Bayer") makes, sells, distributes, and markets vitamin products, including One a Day Prenatal Multivitamins (the "Products").  Defendants' Products are vitamins intended for consumption for women who intend to become pregnant, are pregnant, or are breastfeeding.  Yet, there is no warning or disclosure telling consumers that the products contain lead.  And, independent laboratory testing shows that the vitamins do in fact contain lead in harmful amounts that even exceed California's maximum allowable daily dose limit.

5.      Like other consumers, Plaintiff Daniela Dawson purchased One a Day Prenatal Multivitamins. The products did not disclose the presence of lead.  She believed that the product was properly manufactured, free from defects, safe for consumption, and not adulterated or misbranded.

## II.      Parties.

6.      Plaintiff Daniela Dawson is a citizen of Illinois, domiciled in Lake County.

7.      The proposed class includes citizens of all states except California.

8.      Defendant Bayer Corporation is an Indiana corporation with its principal place of business in Whippany, New Jersey.

9.      Defendant Bayer Healthcare LLC is a Delaware corporation with its principal place of business in Whippany, New Jersey. Defendants market and sell One a Day Prenatal Multivitamins.

## III.      Jurisdiction and Venue.

10.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendants.

11.      This Court has personal jurisdiction over Defendants. Defendants do business in Illinois.  They advertise and sell their Products in Illinois, and serve a market for their Products in Illinois. Due to Defendants' actions, their Products have been marketed and sold to consumers in

CLASS ACTION COMPLAINT
Case No. 1:23-cv-5329

2

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

Illinois, and harmed consumers in Illinois. Plaintiff's claims arise out of Defendants' contacts with this forum. Due to Defendants' actions, Plaintiff purchased Defendants' Products in Illinois, and was harmed in Illinois.

12.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendants would be subject to personal jurisdiction in this District if this District were a separate state. Defendants advertise and sell their Products to customers in this District, serve a market for their Products in this District, and Plaintiff's claims arise out of Defendants' contacts in this forum.

13.     Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred here.

## IV.     Facts.

### A.     Lead is toxic.

14.     Lead is toxic.  Lead accumulates in the body and "affects multiple body systems."[11] In children, it can cause "profound and permanent adverse health impacts, particularly on the development of the brain and nervous system."[12]  It also "causes long-term harm in adults, including increased risk of high blood pressure and kidney damage."[13]  There is "no known safe blood level concentration."[14]  "Lead exposure is estimated to accounts for 21.7 million years lost to disability and death…worldwide due to long-term effects on health."[15]

15.     Lead exposure is particularly risky for pregnant women, women who are trying to get pregnant, and nursing mothers.  Lead "affects female reproduction by…reducing fertility potential, delaying conception time, altering the hormonal production, circulation, [and] affecting pregnancy and its outcome."[16]  "Exposure of pregnant women to high levels of lead can cause miscarriage, stillbirth, premature birth and low birth weight."[17]

---

[11] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6309352/.
[17] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

16. In addition to increasing the risk for miscarriage, lead can "cause the baby to be born too early or too small, hurt the baby's brain, kidneys, and nervous system," and "cause the child to have learning or behavior problems." [18] "Lead can be passed through a pregnant woman's placenta to the fetus, or through breast milk to a baby." [19] Further, "[y]oung children are particularly vulnerable to the toxic effects of lead and can suffer profound and permanent adverse health impacts, particularly on the development of the brain and nervous system." [20] "Even low levels of lead in blood have been shown to negatively affect a child's intelligence, ability to pay attention, and academic achievement." [21] "There is no level of exposure to lead that is known to be without harmful effects." [22]

**B. Defendants' Products contain lead.**

17. Defendants make, sell, and distribute vitamins, including One a Day Prenatal Multivitamins. The vitamins are marketed as "prenatal" vitamins, and depict a pregnant mother:

 

---

[18] https://www.cdc.gov/nceh/lead/prevention/pregnant.htm
[19] https://www.healthychildren.org/English/ages-stages/prenatal/Pages/Blood-Lead-Levels-in-Pregnant-Breastfeeding-Moms.aspx
[20] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health
[21] https://www.cdc.gov/nceh/lead/prevention/health-effects.htm
[22] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health

CLASS ACTION COMPLAINT
Case No. 1:23-cv-5329

4

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

18.     Defendants' marketing expressly directs women to take the vitamins before, during, and after pregnancy.  The marketing materials tell women to take the vitamins "at least four weeks before getting pregnant," "throughout pregnancy," and "while breastfeeding."[23]  Defendants advertise that their products are a "Complete Multivitamin for Before · During · After Pregnancy."[24]  The bottle also states that the vitamin is a "Complete Multivitamin with Brain Support," with "Triple Brain Support."

19.     The marketing materials also state that Defendants' "multivitamins are put through 100+ rigorous quality checks."  It further states, "We formulate with good stuff you want, not stuff you don't."[25]

20.     These marketing statements—on the bottles, packaging, and website— are made directly to buyers of the Products.

21.     By making, selling, and marketing the Products as "prenatal" multivitamins to consumers, Defendants represent to consumers that the Products do not contain harmful chemicals such as lead.  In addition, by marketing the Products as prenatal vitamins, Defendants represent to consumers that the Products are safe and healthy for pregnant women, women who expect to become pregnant, and their children.

22.     The Products do not include any labeling indicating to consumers that they contain any lead.  There is no warning indicating that consuming the Products can expose consumers to lead.  Based on the labels and the fact that the Products are sold and marketed as vitamins fit for consumption by women who are pregnant and intend to become pregnant, consumers are misled into believing that these products do not contain lead.  They are unaware that the Products may be contaminated with lead.  That a product intended for consumption as a prenatal vitamin contains lead, or may contain lead, is material to reasonable consumers.

23.     The truth is, the One a Day Prenatal Multivitamins contain lead.  In July 2023, an

---

[23] https://www.oneaday.com/vitamins/prenatal-pregnancy-vitamins/prenatal-multivitamin
[24] https://www.oneaday.com/vitamins/prenatal-pregnancy-vitamins/prenatal-multivitamin
[25] https://www.oneaday.com/vitamins/prenatal-pregnancy-vitamins/prenatal-multivitamin

independent laboratory tested samples of Plaintiff's One a Day Prenatal Multivitamins for lead, using inductively coupled plasma mass spectrometry (ICP-MS). Each sample tested positive for lead. For example, one test result showed that Plaintiff's vitamins contained 290.7 parts per billion of lead. Just one serving contained 0.527 micrograms of lead, exceeding the maximum allowable daily dose level set by the state of California.

24.     There is no need for Defendants' Products to contain lead. Other vitamin makers are able to make vitamin products that are not contaminated with lead.

**C.      Consumers are not aware of the danger posed by Defendants' Products.**

25.     Consumers reasonably expect that Defendants' Products are safe for consumption. The purpose of a daily multivitamin is to consume it daily. And, consumers can be expected to consume the recommended serving size as directed by the label. Moreover, consumers take prenatal vitamins to enhance their health, and the health of their unborn children. They do not expect that prenatal vitamins may be contaminated with lead. They do not expect that the vitamins contain lead, which harms the health of women who intend to become pregnant, pregnant mothers, and their children.

26.     Consumers reasonably rely on Defendants' representations on the packaging, bottles, and advertisements for the Products. The representations on the packaging, bottles, and advertisements are made directly to buyers. The representations include the word "Prenatal," and the silhouette of a pregnant mother. These representations lead reasonable consumers to believe that the Product is safe for pregnant mothers, women who intend to become pregnant, and women who have young children.

27.     Defendants should have, but did not, warn consumers that its Products contained lead. The information could have been placed on the vitamin labels. For example, Defendants could have placed a warning that consuming the Products would expose consumers to lead.

28.     Thus, consumers are unaware that the Products contain lead. They are unaware that Defendants' Products may be contaminated with lead.

CLASS ACTION COMPLAINT
Case No. 1:23-cv-5329

6

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

**D. Defendants are aware of this risk.**

29. Defendants know of the risk that their Products are contaminated with lead.

30. It is well-known that dietary supplements like vitamins can be contaminated with lead. For example, studies have shown that multivitamins can be contaminated with lead, and the FDA has warned about lead poisoning from dietary supplements. [26]

31. As makers of vitamins, Defendants monitor and keep track of research on the risks of contamination of its products. For example, Defendants' website states that Defendants' "multivitamins are put through 100+ rigorous quality checks."[27]

32. This is diligence that large companies like Defendants routinely do when selling consumables such as vitamins. Defendants are aware of the fact that their Products may be contaminated with lead. And they are further aware of research that lead is harmful to people, in particular to women who plan on becoming pregnant, pregnant women, fetuses, and young children.

**E. Plaintiff was misled by Defendant.**

33. Plaintiff regularly purchased the One A Day Prenatal Multivitamins from December 2021 – May 2023. For example, on May 27, 2022, August 31, 2022, and February 1, 2023, Ms. Dawson purchased the One A Day Prenatal Advanced Complete Multivitamins from a Walmart store in Wheeling, IL.

34. In purchasing the Products, Plaintiff read and relied on the representations on the packaging and on the bottle. The packaging did not disclose that the Product had lead, or provide any warning that the Product might contain lead. Thus, at the time of purchase, Plaintiff was unaware that Defendants' Product contained lead.

35. In addition, Plaintiff saw and relied on the representations on the packaging and bottle that the Products were safe for consumption by women who intend to get pregnant, are

---

[26] https://www.consumerreports.org/vitamins-supplements/lead-poisoning-from-dietary-supplements-/; Lead in Food, Foodwares, and Dietary Supplements | FDA; Lead in Mineral or Multivitamin-Multimineral Products - PubMed (nih.gov); Lead in Food, Foodwares, and Dietary Supplements | FDA.

[27] https://www.oneaday.com/vitamins/prenatal-pregnancy-vitamins/prenatal-multivitamin

CLASS ACTION COMPLAINT
Case No. 1:23-cv-5329

7

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

pregnant, and women who may be nursing young children.  The representations include the word "Prenatal," and the silhouette of a pregnant mother.   These representations lead reasonable consumers, including Plaintiff, to believe that the Products are safe for pregnant mothers, women who intend to become pregnant, and women who have young children.

36.     Plaintiff relied on these representations and omissions, and consumed the Products during and after her pregnancy, including while breastfeeding.

37.     When she purchased the Products, Plaintiff relied on the fact that they were safe for consumption and that they did not contain lead.  She would not have purchased the Products if she knew that the Products contained lead. In fact, knowing the truth, the Products are worthless to her.

38.     As a result, Plaintiff suffered injury in fact when she spent money to purchase Products she would not otherwise have purchased absent Defendants' misconduct.

## V.     Class Action Allegations.

### The Nationwide ex-California Class and the Illinois Subclass

39.     Plaintiff brings her claims individually and on behalf of the following class and subclasses:

- Nationwide ex-California Class: all persons other than persons in California who, while in the United States and within the applicable statute of limitations period, purchased one or more Products for personal consumption (the "Nationwide Class").[28]

- Illinois Subclass: all persons who, while in the state of Illinois and within the applicable statute of limitations period, purchased one or more Products for personal consumption (the "Illinois Subclass").

40.     The following people are excluded from the class and the subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants

---

[28] The state of California has a state-specific regulatory scheme with notice requirements. Thus, California residents are excluded at this time.

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assignees of any excluded persons.

*Numerosity*

41.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are millions of proposed class members.

*Commonality*

42.     There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

(1) Whether Defendants misrepresented and/or failed to disclose material facts concerning the Products;

(2) Whether Defendants' conduct was unfair and/or deceptive;

(3) Whether Defendants breached its contracts;

(4) Whether Defendants breached an express warranty;

(5) Whether Defendants breached an implied warranty;

(6) What damages are needed to compensate Plaintiff and the proposed class; and

(7) Whether an injunction is necessary to prevent Defendants from continuing to market and sell defective and adulterated Products that contain lead.

43.     Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased the Products.

44.     The interests of the members of the proposed class and subclass will be adequately protected by Plaintiff and her counsel. Plaintiff's interests are aligned with, and do not conflict with, the interests of the members of the proposed class or subclasses that she seeks to represent. Moreover, Plaintiff has retained experienced and competent counsel to prosecute the class and subclass claims.

CLASS ACTION COMPLAINT
Case No. 1:23-cv-5329

9

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

*Predominance and Superiority*

45.     The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that Defendants' labeling is found to be unfit for its ordinary use for some proposed class members, but not others.

46.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether Defendants have made, marketed, and sold a defective product unfit for its ordinary use.

47.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to separately litigate millions of individual claims.

*Class-wide Injunctive Relief*

48.     Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

**VI.     Claims.**

**Count I: Breach of the Illinois Consumer Fraud and
Deceptive Business Practices Act
815 ILCS 505/2**

**(on behalf of Plaintiff and the Illinois Subclass)**

49.     Plaintiff incorporates each and every factual allegation set forth above.

50.     Plaintiff brings this claim on behalf of herself and the Illinois Subclass, seeking reasonable attorneys' fees, actual damages, and other relief.

51.     Defendants are each a "person" as that term is defined in 815 ILCS 505/1(c).

52.     Plaintiff and the members of the Illinois Subclass are "consumers" as that term is

CLASS ACTION COMPLAINT
Case No. 1:23-cv-5329

10

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

defined in 815 LCS 505/1(e).

53.     Plaintiff and the Illinois Subclass purchased the Products in Illinois.

54.     The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

55.     Defendants participated in misleading, false, or deceptive acts that violated the Illinois statute. The conduct alleged in this Complaint constitutes unfair or deceptive methods of competition, and the conduct was undertaken by Defendants in transactions intended to result in reliance. The conduct did result in the sale of goods to consumers.

56.     As alleged more fully above, Defendants advertised their Products to consumers in a way that is misleading or is likely to deceive consumers. Defendants' statements and omissions led Plaintiff and other members of the Illinois Subclass to believe that their Products are free of defects and safe and fit for human consumption.  The statements and omissions led Plaintiff and the Illinois Subclass to believe that the Products did not contain lead.  Defendants failed to warn that the Products contained lead.  Defendants' representations and omissions were likely to deceive, and did deceive, a substantial portion of the public into believing that the product did not contain lead.

57.     Even though Defendants were aware of a material defect— that the Products may contain lead— Defendants sold their products without notifying customers of this fact.  Instead, Defendants omitted this information, and intended that consumers would rely on the omission. Plaintiff and the Subclass relied on Defendants' silence, and purchased Defendants' Products.

58.     As alleged above, Defendants' representations and omissions are deceptive and unfair. They offend public policy, are immoral, unethical, oppressive, and unscrupulous, and cause substantial injury to consumers.

59.     As alleged above, Defendants' representations and omissions were willful and

CLASS ACTION COMPLAINT
Case No. 1:23-cv-5329

11

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

knowing.

60.     Defendants' representations and omissions occurred in the conduct of trade and commerce affecting the people of the State of Illinois.

61.     Defendants' representations and omissions were material. As alleged in detail above, these representations were important to consumers and affected their choice to purchase the Products. And, as alleged in detail above, these representations were likely to mislead, and did mislead, reasonable consumers.

62.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendants' conduct because: (a) they would not have purchased the Products if they had known that they contained lead, or risked being contaminated by lead, (b) they overpaid for the Products because the Products are sold at a price premium due to Defendants' misleading representations and omissions, or (c) they received a product that was defective and thus less valuable than what they paid for.

63.     Plaintiff and the Subclass seek actual damages, an injunction, reasonable attorneys' fees, expenses, and all other available relief.

### Count II: Violation of Magnuson-Moss Warranty Act, 15 U.S.C. §2301, et seq. (on behalf of Plaintiff and the Nationwide ex-California Class)

64.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

65.     Plaintiff brings this count individually and for the Nationwide ex-California Class, or in the alternative, the Illinois Subclass.

66.     Defendants' Products are each a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(1).

67.     Plaintiff and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(3).

68.     Defendants are a "supplier" and "warrantor" within the meaning of the Magnuson-

CLASS ACTION COMPLAINT
Case No. 1:23-cv-5329

12

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

Moss Warranty Act, 15 U.S.C. §2301(4)-(5).

69.     Defendants issued material, written warranties by representing on the packaging and the bottle that the Products were "Prenatal" products and by including images of a pregnant woman. This was an affirmation of fact and a promise that the Products were safe for use by women who were pregnant, and that the Products did not contain unsafe levels of contaminations such as lead.

70.     Defendants marketed their Products to consumers, and Defendants' warranty was the basis of the bargain and was relied-upon by Plaintiff and Class members.

71.     In fact, the Products do not conform to the above-referenced representation because, as alleged above, they are contaminated with lead. Thus, the warranty was breached.

72.     Plaintiff and Class members were foreseeable third-party beneficiaries of Defendants' sale of the Products. Defendants sell the Products to retailers for distribution and sale to consumers such as Plaintiff and class members. Defendants' Products are vitamins intended for consumption by women, such as Plaintiff and class members, who intend to become pregnant, are pregnant, or are breastfeeding.

73.     In addition, as the manufacturer of vitamins, Defendants impliedly warranted to Plaintiff and the class that the Products were of merchantable quality and were safe for their ordinary use as vitamins.

74.     As described in detail above, the Products, when sold and at all times after, were not in merchantable condition and were not fit for the ordinary purpose for which they are used. Specifically, the Products are inherently flawed given that they were contaminated with lead. This makes them unfit for ordinary purposes even when used correctly.

75.     Defendants' Products are not adequately labeled because they fail to disclose the risk of lead exposure.

76.     Thus, Defendants breached the implied warranty of merchantability in connection with the sale and distribution of the Products.

77.     Defendants also impliedly warranted to Plaintiff and the class that the Products were suitable and fit for a particular purpose. Plaintiff and class members purchased Defendants'

CLASS ACTION COMPLAINT
Case No. 1:23-cv-5329

13

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

Products for the particular purpose of consuming the Products as a prenatal vitamin. As explained in detail above, Defendants knew, or had reason to know, that Plaintiff and class members were purchasing the Products for the particular purpose of consuming them as prenatal vitamins.

78. Defendants market themselves as a knowledgeable and effective developer and seller of consumer healthcare products, including vitamins. As explained more fully above, Defendants knew, or had reason to know, that Plaintiff and class members would justifiably rely on Defendants' particular skill and knowledge in selecting vitamins. Plaintiff and class members did justifiably rely on Defendants' judgment and skill.

79. Due to the defect in the Products, the Products are not suitable for their intended purpose.

80. Defendants' breach of implied warranties has deprived Plaintiff and class members of the benefit of their bargain.

81. Plaintiff and the class were foreseeable third-party beneficiaries of Defendants' sale of the Products. Defendants sell the Products to retailers for distribution and sale to consumers such as Plaintiff and class members. Defendants' Products are vitamins intended for consumption by women, such as Plaintiff and class members, who intend to become pregnant, are pregnant, or are breastfeeding.

82. Plaintiff notified Defendants with notice of these breaches of warranties by mailing a notice letter on July 25, 2023.

83. The amount in controversy of Plaintiff's individual claim exceeds $25. The amount in controversy of this action exceeds the sum value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

84. Defendants have been afforded a reasonable opportunity to cure their breach, including after Plaintiff sent a notice letter informing Defendants of the breach.

85. Defendants' breaches directly caused Plaintiff and Class members harm. Plaintiff and class members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased Defendants' Products if they had known the truth, (b) they overpaid

CLASS ACTION COMPLAINT
Case No. 1:23-cv-5329

14

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

for the Products because the Products are sold at a price premium due to the misrepresentation and omissions, or and/or (c) they received a product that was defective and thus less valuable than what they paid for.

**Count III: Breach of Implied Warranty**
**(on behalf of Plaintiff and the Nationwide ex-California Class)**

86.     Plaintiff incorporates by reference each and every factual allegation set forth above.

87.     Plaintiff brings this claim on behalf of herself and the Nationwide ex-California Class.  In the alternative, she brings this claim on behalf of herself and the Illinois Subclass.

88.     The Uniform Commercial Code § 2-314 states that "a warranty that [] goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." "Merchantable" goods must be "fit for the ordinary purposes for which the goods are used."

89.     Defendants are and were, at all relevant times, a merchant with respect to consumer healthcare products, and with respect to vitamins in particular. Defendants' Products each constitute a "good" under the UCC.

90.     Plaintiff and class members purchased Defendants' Products.

91.     Plaintiff and the class members were foreseeable third-party beneficiaries of Defendants' sale of the Products.  Defendants sell the Products to retailers for distribution and sale to consumers such as Plaintiff and class members.  Defendants' Products are vitamins intended for consumption by women, such as Plaintiff and class members, who intend to become pregnant, are pregnant, or are breastfeeding.

92.     As the manufacturer of vitamins, Defendants impliedly warranted to Plaintiff and the Class that the products were of merchantable quality and were safe for their ordinary use as prenatal vitamins.  In fact, as described in detail above, the products, when sold and at all times after, were not in merchantable condition and were not fit for the ordinary purpose for which they are used. Specifically, the Products are inherently flawed and defective because they contained lead.  The defect design makes them unfit for ordinary purposes even when used correctly.  In addition,

CLASS ACTION COMPLAINT
Case No. 1:23-cv-5329

15

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

Defendants' Products are not adequately labeled because they fail to disclose that they contained lead.

93. Thus, Defendants breached the implied warranty of merchantability in connection with the sale and distribution of the Products.

94. Defendants' sale of the Products is subject to the implied warranty of merchantability. By selling Products to consumers, Defendants are warranting that the Products are merchantable, meaning that they are fit for their ordinary purpose as prenatal vitamins.

95. Defendants breached this warranty because, as alleged in detail above, Defendants' Products are unsafe for consumption and are contaminated. As discussed in greater detail above, Defendants' Products contain lead. For example, a single serving of Defendants' Product contained lead that exceeded the maximum allowable daily dose limits under California law. This renders Defendants' products unsafe and unfit for human consumption, and in particular by pregnant women, and so unfit for their ordinary purpose.

96. Defendants' Products would not pass without objection in the trade under the contract description; are not of fair average quality within the description; are not fit for the ordinary purposes for which such goods are used; do not run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; are not adequately labeled; and do not conform to the promises or affirmations of fact made on the label.

97. Plaintiff provided Defendants with notice of this breach of implied warranty, by mailing a notice letter to Defendants' headquarters on July 25, 2023.

98. Plaintiff and Class members were injured as a direct and proximate result of Defendants' conduct because: (a) they would not have purchased Defendants' Products if they had known that the products contained lead, or risked being contaminated by lead, (b) they overpaid for the products because the products are sold at a price premium due to Defendants' false implied warranty; or (c) they received products that were, in truth, worthless.

CLASS ACTION COMPLAINT
Case No. 1:23-cv-5329

16

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

## Count IV: Breach of Express Warranty
### (on behalf of Plaintiff and the Nationwide ex-California Class)

99.     Plaintiff incorporates by reference each and every factual allegation set forth above.

100.    Plaintiff brings this claim on behalf of herself and the Nationwide ex-California Class.  In the alternative, she brings this claim on behalf of herself and the Illinois Subclass.

101.    Defendants, as the manufacturer, marketer, distributor, and/or seller of the Products, issued material, written warranties by representing on the packaging and the bottle that the Products were "Prenatal" products and by including images of a pregnant woman.  This was an affirmation of fact and a promise that the Products were safe for use by women who were pregnant, and that Products did not contain lead.

102.    Defendants marketed their Products directly to consumers, and Defendants' warranty was the basis of the bargain and was relied-upon by Plaintiff and Class members.

103.    In fact, the Products do not conform to the above-referenced representations because, as alleged above, they are contaminated with lead.  Thus, the warranty was breached.

104.    Plaintiff notified Defendants with notice of these breaches of warranties by mailing a notice letter on July 25, 2023.

105.    Plaintiff and class members were injured as a direct and proximate result of Defendants' conduct because: (a) they would not have purchased Defendants' Products if they had known that the products contained lead, or risked being contaminated by lead, (b) they overpaid for the products because the products are sold at a price premium due to Defendants' false implied warranty; or (c) they received products that were, in truth, worthless.

## Count IV: Quasi-Contract

### (on behalf of Plaintiff and the Nationwide ex-California Class)

106.    Plaintiff incorporates by reference each and every factual allegation set forth above.

107.    Plaintiff brings this claim on behalf of herself and the Nationwide ex-California Class.  In the alternative, she brings this claim on behalf of herself and the Illinois Subclass.

108.    Plaintiff and class members purchased the Products from Defendants.  When they

CLASS ACTION COMPLAINT
Case No. 1:23-cv-5329

17

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

purchased the Products, they reasonably believed that the Products were fit for their expected and ordinary purpose. They believed that the Products were fit for human consumption. They did not know that the Products contained lead, or risked being contaminated by lead.

109. Plaintiff and class members conferred benefits on Defendants by purchasing defective Products.

110. Defendants voluntarily accepted and retained this benefit.

111. In exchange, Defendants provided Products that had an inherent defect, were unfit for and unsafe for their ordinary use, were unfit for human consumption, particular by pregnant women, and contained lead.

112. It would be inequitable for Defendants to retain this benefit.

**VII. Jury Trial Demand.**

113. Plaintiff demands the right to a jury trial on all issues so triable.

**VIII. Prayer for Relief.**

114. Plaintiff seeks the following relief for herself and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages, including statutory and treble damages, as allowed by law;

- Restitution, disgorgement, and other just equitable relief, as allowed by law;

- Attorney's fees, as available by law;

- An injunction;

- Pre- and post-judgment interest; and

- Any additional relief that the Court deems reasonable and just.

CLASS ACTION COMPLAINT
Case No. 1:23-cv-5329

18

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

Dated: August 10, 2023

Respectfully submitted,

By: _/s/ Christin Cho_

Christin K. Cho (Cal. Bar No. 238173)*
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Counsel for Plaintiff*

*Generally admitted

CLASS ACTION COMPLAINT
Case No. 1:23-cv-5329

19

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066